**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000356**
**18-NOV-2025**
**08:08 AM**
**Dkt. 145 MO**

NOS. CAAP-23-0000356 and CAAP-23-0000598
(consolidated)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF THE GUARDIANSHIP OF I.W. and T.E.

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(CASE NOS. 5GD151000035 and 5GD151000036 (consolidated))

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

In CAAP-23-0000356, Petitioners-Appellants SW (**Mother**) and SK, who identifies himself as hānai father, (**Appellants**) appeal from: (1) the June 22, 2022 Order Denying Mother's Motion for Summary Judgment [(**MSJ**)] (**Order Denying MSJ**); (2) the June 22, 2022 Order Granting Guardian's Motion for an Order Instructing Mother to Amend Her 2021 Tax Return [(**Motion to Amend Tax Return**)] (**Order to Amend Tax Return**); (3) the June 22, 2022 Order on Guardian Ad Litem's [(**GAL's)**] Motion for Clarification and Direction [(**GAL Motion for Clarification**)] (**GAL Clarification Order**); (4) the January 27, 2023 Order Granting Motion to Add Co-Guardian and Modify the Limited Guardianship to an Unlimited Guardianship [(**Motion to Modify Guardianship**)] and Denying Petition for Removal of [JK] as Guardian of Minor [(**2022 Petition to Remove Guardian**)] [(collectively, **Guardianship Motions**)]

(**Guardianship Order**); (5) the April 25, 2023 Order Granting Guardian's Motion to Change Minors State of Residence [(**Motion to Relocate**)] and Denying Interested Party's Motions for a New Trial and/or Relief from [Guardianship Order], and for Stay Pending Disposition of the Motion and Denying Mother and Interested Party's Petition for an Order Terminating Guardianship of Minor [(**Motion for New Trial and Relief**)] (**Relocation Order**); and (6) the July 3, 2023 Findings of Facts [(**FOFs**)] and Conclusions of Law [(**COLs**)] (**FOFs & COLs**), entered by the Family Court of the Fifth Circuit (**Family Court**).[1]

In CAAP-23-0000598, Appellants also appeal from: (1) the July 18, 2023 Ex Parte Order (**Ex Parte Order to Verify Return Flights**); (2) the July 31, 2023 Ex Parte Order (**Ex Parte Order Denying Motion to Reconsider**); and (3) the April 5, 2024 FOFs and COLs (**Ex Parte Order's FOFs & COLs**).[2]

I.    BRIEF BACKGROUND

JK (**Guardian**) is IW's and TE's (the **Children's**) maternal grandmother. On December 16, 2015, Guardian and her husband, GK (collectively, **Guardians**) filed, per child, a Petition for Appointment of a Guardian of a Minor for [the

---

[1]    The Honorable Jonathan J. Chun presided over the challenged orders.

The Honorable Edmund D. Acoba presided over the January 20, 2016 Order Appointing Guardian with Unlimited Authority and the July 10, 2020 Stipulation and Order to Approve Resignation of Co-Guardian [GK] and to Establish a Limited Guardianship of the Minor Child.

The Honorable Stephanie R.S. Char presided over the January 11, 2022 Order Granting Guardian's Motion for Appointment of [GAL].

[2]    The Honorable Michael K. Soong presided over the Ex Parte Order to Verify Return Flights and the Ex Parte Order's FOFs & COLs.

The Honorable Randal G.B. Valenciano presided over the Ex Parte Order Denying Motion to Reconsider.

2

Children].  Guardians sought guardianship of the Children and the appointment of a guardian ad litem (**GAL**).  On December 9, 2015, Mother signed a Power of Attorney:  Temporary Custody, Medical and Educational Consent, granting Guardians the authority to authorize medical care and treatments for the Children, apply for public benefits on the Children's behalf, and act on Mother's behalf concerning the Children's education and social development.

In December of 2018, Mother and the Children's father (**Father**) each filed per child a Waiver of Notice and Consent to Guardianship.  The Family Court entered per child the January 20, 2016 Order Appointing Guardian with Unlimited Authority.

In August and September of 2019, Appellants filed petitions to remove the Guardians and terminate the guardianships of TE and IW.

On April 20, 2020, Guardians filed per child Co-Guardians Motion to Move the Minor Out of State, seeking to relocate the Children to Oregon for Guardian's new job.  These motions were denied.

On July 10, 2020, the parties filed per child a Stipulation and Order to Approve Resignation of Co-Guardian [GK] and to Establish a Limited Guardianship of the Minor Child (**Stipulation**).  The Stipulation provided, *inter alia*, that:  (1) GK was removed as a co-guardian; (2) Guardian would continue as guardian of the Children but with limited authority; (3) so long as Guardian resided in Oregon, the Children would attend school in Oregon and live primarily with Guardian; (4) Mother may exercise custodial time during the school year; (5) Guardian had

3

two weeks of summer visitation time with the Children; and (6) Mother may have daily phone calls or video conferencing with the Children, and Guardian may have the same when the Children are with Mother. The Stipulation resolved all pending motions and petitions.

On August 23, 2021, Appellants filed per child a Petition for an Order Terminating Guardianship of Minor (**2021 Petition to Terminate Guardianship**). Guardian filed an answer, opposing the requested relief.

On December 22, 2021, Guardian filed per child the Motion to Modify Guardianship. After a January 11, 2022 hearing, the Family Court entered an order appointing a GAL, ordering that the GAL's sole duty is to protect the Children's needs and interests by performing the following duties: (1) interviewing relevant persons and reviewing relevant records; (2) ascertaining the interest of the Children; (3) seeking cooperative resolutions to the Children's situation; and (4) providing findings and recommendations to the Family Court. The Family Court further ordered that Guardian shall front the cost of the GAL and that the issue of whether other parties shall be ordered to reimburse the GAL costs would be reserved for later determination.

Appellants subsequently filed per child the 2022 Petition to Remove Guardian. On March 18, 2022, Mother filed per child MSJs, seeking summary judgment concerning the termination of Guardian's limited guardianship for the Children. Guardian opposed the motion. On March 29, 2022, GAL filed the [GAL] Report and recommended that it was in the best interest of the

Children to grant both Guardians an unlimited guardianship over the Children.

On March 31, 2022, the Family Court heard arguments on the MSJs,[3] and found there were genuine issues of material facts that needed to be decided, including: (1) Mother's fitness; (2) Mother's ability to provide a safe and stable home; (3) whether Mother's prior grant of custody had been superseded by the guardianship; and (4) the best interest of the Children. The Family Court entered per child the Order Denying MSJ on June 22, 2022.

On April 26, 2022, GAL filed per child a GAL Motion for Clarification, seeking direction on how to proceed regarding a request from SK that he and Mother be allowed to review any documents and materials relied on by the GAL in executing her duties.

On May 2, 2022, Guardian filed per child the Motion to Amend Tax Return, requesting that Mother remove the Children from her 2021 tax return. The Family Court heard the GAL Motion for Clarification and the Motion to Amend Tax Return on May 18, 2022. Regarding the Motion to Amend Tax Return, the Family Court stated that it would not make its ruling based upon its interpretation of Internal Revenue Service rules, but rather based on what it believed to be fair and equitable. The Family Court stated that the issue was whether it should include a provision in the Stipulation about who is entitled to claim the Children as dependents. The Family Court explained: (1) Guardian had

---

[3] For the sake of judicial economy, the Family Court heard the MSJs for each child at the same time, as if the MSJs were consolidated.

5

claimed the Children as dependents since 2015; (2) Mother claimed the Children as dependents for the first time in 2021; (3) the intent at the time of the 2021 Stipulation was to have the Children be dependents of Guardian based on the prior history of tax filings; (4) Guardian provided the majority of the Children's support; and (5) Guardian has physical control of the Children during the majority of the year. The Family Court ordered Mother to amend her 2021 tax return to remove the Children as dependents, and to not declare the Children as dependents on future tax returns.

Regarding the GAL Motion for Clarification, the Family Court ordered GAL to provide limited documents to the parties and assigned the cost of the motion to SK based on its finding that the motion arose out of SK's request to GAL.

The Family Court held a trial on the Guardianship Motions in September and December of 2022. On January 27, 2023, the Family Court filed per child the Guardianship Order providing, *inter alia*, that: (1) Guardian's guardianship will be unlimited; (2) GK is added as a co-guardian to the Children, (3) the Petition to Remove Guardian is denied, and (4) the Stipulation is amended.

On January 31, 2023, post-trial, Guardians filed per child the Motion to Relocate, seeking to move the Children to Michigan.

On February 6, 2023, Appellants filed per child the Motion for New Trial and Relief.

The Motion to Relocate and Motion for New Trial and Relief were heard on March 3, 2023, and March 14, 2023. The

6

Family Court denied the Motion for New Trial and Relief, and granted the Motion to Relocate and entered written orders on April 25, 2023.

On May 24, 2023, Appellants filed a Joint Notice of Appeal in CAAP-23-356, challenging the Order Denying MSJ, the Order to Amend Tax Return, the GAL Clarification Order, the Guardianship Order, and the Relocation Order. On July 3, 2023, the Family Court filed per child the FOFs & COLs for the Order Denying MSJ, the Order to Amend Tax Return, the Guardianship Order, and the Relocation Order.

On July 13, 2023, Guardians filed an ex parte motion regarding verification of return flights. On July 18, 2023, the Family Court filed the Ex Parte Order to Verify Return Flights, ordering that: (1) Mother must provide Guardians confirmation and verification that return flights and travel arrangements have been made to return the Children to Michigan no later than August 14, 2023; (2) that if Mother fails to comply, Guardians may pick up the Children on Kauaʻi; and (3) Mother is not permitted to take the Children out of the country without Guardians' consent.

On July 27, 2023, Mother sought reconsideration, which was denied in the Family Court's July 31, 2023 Ex Parte Order Denying Motion to Reconsider.

On August 8, 2023, the Family Court entered an order approving the parties' stipulation to consolidate the Children's cases. On October 20, 2023, Appellants filed the Notice of Appeal in CAAP-23-598, challenging the Ex Parte Order to Verify Return Flights and the Ex Parte Order Denying Motion to

Reconsider. On April 5, 2023, the Family Court filed FOFs & COLs for the Ex Parte Order to Verify Return Flights and FOFs & COLs for the Ex Parte Order Denying Motion to Reconsider.

On February 11, 2025, we consolidated the two appeals.

II. POINTS OF ERROR

Appellants collectively raise thirty-eight points of error, although a number of these points of error overlap, and challenge FOFs and COLs further identified below. In CAAP-23-356, Appellants both argue that the Family Court erred by: (1) denying Mother's MSJ; (2) denying the Petition to Remove Guardian; (3) entering the Order to Amend Tax Return; (4) ordering SK to pay GAL's fees in the GAL Clarification Order; (5) granting the Motion to Relocate; (6) applying Hawaii Revised Statutes (**HRS**) § 560:5-112(b), which is unconstitutional as written and as applied; (7) applying HRS § 571-46, which is unconstitutional as written and as applied to Mother; (8) entering FOFs A18, A19, B9, B10, C18(d), C19, C20, D6, D8, D17, D18, D20, D21, D23, D30, D32, D35, D43, D47, D71, D93, D95, D96, D97, D102, D103, D104, D108, D110, D111, D131, D141; and (9) entering COLs A7, A8, A9, B1, B2, C2, D5, D8, D10, D16, D21, D24, E5, and E6. Mother also contends that the Family Court erred by: (1) relying on the GAL Report; and (2) entering FOFs D7, D10, D11, D27, D55, D56, D59, and D132. SK also argues that the Family Court erred by: (1) entering the Guardianship Order; (2) denying SK's Motion for New Trial and Relief; (3) entering FOFs C17, C18(c), C18(e), C18(f), D13, D19, D28, D29, D34, D37, D40, D44, D45, D46, D63, D64, D65, D77, D94, D136, D144, D145, D146,

E25, and E27; and (4) entering COLs D2, D3, D6, D9, D11, D12, D13, D14, D15, D17, D18, D19, D20, D22, D23, E1, E2, E3, E4, and E7.

In CAAP-23-598, Appellants both contend that the Family Court erred by:  (1) depriving them of their substantive liberty interests, property interests, and due process rights; (2) issuing the Ex Parte Order to Verify Return Flights in the absence of extraordinary circumstances and without a post-deprivation hearing; (3) ordering relief regarding international travel that was not sought in the Ex Parte Motion to Verify Return Flights; (4) failing to provide adequate notice to Mother in entering the Ex Parte Order to Verify Return Flights; (5) denying the Ex Parte Motion for Reconsideration; entering FOFs A30, A31, A33, A34, A35, A36, A38, A39, A40, A41, A42, A43, A44, and A47 regarding the Ex Parte Order to Verify Return Flights, and FOFs A6, A8, A9, A11, A12, A13, A14, A15, and A16 regarding the Ex Parte Order Denying Motion to Reconsider; and (6) entering COLs A2, A3, A5, A6, A7, and A8 regarding the Ex Parte Order to Verify Return Flights, and COLs A4, A6, A7, A8, A9, A10, A11, and A12 regarding the Ex Parte Order Denying Motion to Reconsider. Mother also contends that the Family Court erred by ordering her to pay the cost of the Children's interstate travel.  SK also contends that the Family Court erred by ordering relief that affects the rights and responsibilities of the Children as Native Hawaiians without giving SK an opportunity to be heard.

The challenged FOFs for the Order Denying MSJ are as follows:

> [A]18.  The Declaration of Mother and Declaration of [Mother] do not contain sufficient facts based on personal

knowledge to support her claim that there are no genuine issues of material fact in this matter.

[A]19. The records in this matter, including the GAL report and the other pending motions filed by the Guardian, indicate that there are genuine issues of material fact that should be decided after a full hearing on the merits.

The challenged COLs for the Order Denying MSJ are as follows:

[A]6. In re Guardianship of Doe, said, "we construe the custody guardianship provision of HRS § 560:5-209 and the custody provision in HRS § 571-46 *in pari materia* in order to determine the appropriate standard to be applied where conflicting claims between parents and non-parents are made in a guardianship hearing. Id. at 4 P.3d 508 at 517, 93 Haw. 374 (emphasis in original).

[A]7. The determination of whether termination of the Guardianship is unwarranted is based on what is in the minor child's best interest. The best interest of the child is an "issue of ultimate fact. . . " Maeda v. Maeda, 794 P.2d 268, 8 Haw.App. 139 (Haw. App. 1990).

[A]8. The Court concludes that the pleadings and records in this case, including the GAL's report and pending motions filed in this case, show there is a genuine issue of material fact regarding the best interest of the children which should only be decided upon a full hearing on the merits of the case.

[A]9. The Declaration of Mother and Declaration of [Mother] do not contain sufficient facts based on personal knowledge to support her claim that there are no genuine issues of material fact in this matter.

The challenged FOFs for the GAL Clarification Order are as follows:

[B]9. At the hearing, the GAL asked the Court to grant her fees and costs as a result of her having to file the Motion.

[B]10. The Court ordered [SK] to pay for the GAL's fees and costs.

The challenged COLs for the GAL Clarification Order are as follows:

[B]1. Cost and fees of the GAL is assigned to [SK] since it arose from his request.

[B]2. It was proper for the GAL to ask the Court for clarification since she is a neutral party.

The challenged FOFs for the Order to Amend Tax Return are as follows:

10

[C]17.  Guardian was harmed because she was not able to claim the children in 2021 and as a result did not receive a refund that would have been approximately $4,000.00.

[C]18.  After hearing the parties' arguments and reviewing the submitted pleadings on the matter, the Court makes the following findings:

.  .  .  .

c.  The majority of the financial support for the minor child is provided by Guardian.

d.  It is equitable for the Guardian to declare the minor child as a dependent.

e.  Guardian has physical control of the minor children for the majority of the year.

f. The minor children are dependents of the Guardian.

[C]19.  [Mother] is ordered to amend her 2021 tax return to remove the children as dependents.

[C]20.  [Mother] must refrain from claiming the minor children as dependents going forward.

The challenged COL for the Order to Amend Tax Return is:  "[C]2.  It is equitable to allow the Guardian to claim the minor children as dependents on Guardian's tax return due to the Guardian having physical control the majority of the year."

The challenged FOFs for the Guardianship Order are as follows:

[D]6.  The Court finds that [Mother] is not able to parent the children.

[D]7.  [Mother] has not demonstrated an understanding of her children's emotional and education needs, nor specifically did she demonstrate an understanding of [TE's] special needs relating to his ADHD and Autism diagnosis.

[D]8. The Court finds that the GAL's testimony that that [sic] [Mother] is not able to parent the children, is credible, supportable by other evidence and statement and is given weight.

.  .  .  .

[D]10.  [Mother] did not provide evidence that the children would be better off living with her.

[D]11.  [Mother] did she [sic] provide evidence that supported severing the children's relationship with their Grandparent Guardians.

.  .  .  .

11

[D]13.  CFS was involved due to [Mother], "neglecting the children and/or possibly placing the children in danger."

. . . .

[D]17.  [Mother] had sporadic involvement in the children's lives since the advent of the guardianship.

[D]18.  [Mother] has had spotty communication with the minor children throughout the duration of the guardianship.

[D]19.  When all parties resided on Kauai, the communication and contact between [Mother] and the children was inconsistent.

[D]20.  [Mother] demonstrates a lack of consistency and follow through, i.e. saying she was going to come visit and then not showing up.

[D]21.  The inconsistency negatively impacts the children's relationship with [Mother].

. . . .

[D]23.  The children do not want to spend much time with [Mother].

. . . .

[D]27.  The children's preference is given weight as it is based on their emotional needs.

[D]28.  In particular, [IW], is emotionally attached to Guardian since she has lived with her for most of her life.

[D]29.  The testimony of Dr. Dianne Gerrard that [IW]'s emotional attachment primacy is with the Guardian is deemed credible and is adopted as a finding of this Court.

[D]30.  It would be harmful to the emotional health of the children to remove them from the Co-Guardians.

. . . .

[D]32.  By choice, the children do not often speak to [Mother].

. . . .

[D]34.  The children have a quality relationship with the Co-Guardians and are a family unit.

[D]35.  [Mother] had not developed a quality relationship with the children due to her lack of consistent involvement.

. . . .

[D]37.  [Mother] often stayed out late and neglected the children.

. . . .

[D]40.  [Mother] was not able to adequately take care of the children.

. . . .

12

[D]43.   The children have been solely in the care of the Co-Guardian's except for occasional visits with [Mother].

[D]44.   [GK] is the primary caregiver of the children because Guardian works outside of the home.

[D]45.   [GK] is the one who sees to the majority of their daily needs - getting ready for school, getting to school, going to appointment, interfacing with the school, driving them to various activities.

[D]46.   [GK] has provided the primary care for the children while living on Kauai, and in Oregon.

[D]47.   [Mother] did not volunteer to help with the children, or involve herself in their daily lives when they lived on Kauai.

. . . .

[D]55.   [Mother] did not make contact with any schools or services here on Kauai to determine what resources are available to meet the children's emotional and academic needs.

[D]56.   [Mother] did not have contact with the children's school in Oregon and the psychologist seeing the children for well over a year.

. . . .

[D]59.   [Mother] made no attempt to be involved in the [IEP] process, and even after the diagnosis was received, made no attempts to reach out to [TE's] school or therapist to find out what she could do in her home to help him.

. . . .

[D]63.   The children had sores while on Kauai with [Mother]. Guardian determined that the sores were not treated appropriately.

[D]64.   [Mother] did not comply with [TE's] medication protocol.  [Mother] was informed about the proper dosage and the need for [TE] to take medication every day.

[D]65.   [TE] needs the medication to address his ADHD and it helps him manage impulse control and stay better focused. The last couple times [TE] traveled with [Mother], she was provided the exact number of pills for [TE] to take.  Each time he has returned with approximately half of the medication untaken.

. . . .

[D]71.   [Mother] does not understand the emotional needs of her children.

. . . .

[D]77.   Travel of this nature causes stress for the children and in particular [TE].

. . . .

[D]93.   [Mother] demonstrated a lack of understanding of [TE's] needs.

. . . .

[D]95. [Mother] is not able to meet the educational needs of the children and they would suffer as a result.

[D]96. [Mother] is not capable of following through with maintaining [TE's] education.

[D]97. [Mother] lacks interest in the children's education and in particular with [TE's] diagnosis and its impact on his education.

. . . .

[D]102. [The Children] are not particularly close to [their younger siblings].

[D]103. The Co-Guardians have encouraged [Mother] to have a relationship with the children over the years.

[D]104. The Co-Guardians tried to set up scheduled visits and invited [Mother] to school events and performances.

. . . .

[D]108. The Co-Guardians often have a hard time getting in touch with the children.

. . . .

[D]110. The state of the relationship between [Mother] and Guardian support [the Guardians' concern that they would have little contact with the Children if the guardianship is terminated].

[D]111. Both the GAL and Dr. Gerard testified that severing the relationship between the Co-Guardian's and the children would be detrimental to the emotional health of the children and the Court finds these testimonies to be credible and adopts this testimony as a finding of the court.

. . . .

[D]131. [Mother's] mental health issues would adversely impact the children, in particular [TE], who needs routine and structure.

[D]132. In order for [Mother] to agree that the children could go to Oregon with Co-Guardians, Guardian and [GK] had to agree to a Limited Guardianship.

. . . .

[D]136. The children resided with the Co-Guardians approximately forty-one to forty-two weeks out of the year

. . . .

[D]141. The GAL further testified that the Co-Guardian's had custody of the children due to the amount of time per year they were in their care, and the Court finds this testimony to be credible and hereby adopts it as a finding.

. . . .

14

[D]144.  As the primary caregiver of the children, [GK] needs the ability to sign the children up for activities and make decisions on their behalf.

[D]145.  Being a co-guardian accurately reflects the role [GK] plays in the children's lives.

[D]146.  If something were to happen to Guardian rendering her unable to carry out the duties of the guardianship, the most stable and emotionally supportive environment for the children would be with [GK].

The challenged COLs for the Guardianship Order are as follows:

[D]2.  HRS § 560:5-210(b) also addresses termination of a guardianship.  Specifically, a "ward or a person interested in the welfare of a ward may petition for any order that is in the best interest of the ward."

[D]3.  "[I]n a proceeding brought by a parent to remove a non-parent as a guardian of the parent's minor child, the family court must consider the preference granted to parents in Hawaiʻi Revised Statutes (HRS) § 571-46(1)(1993) in determining whether under HRS § 560:5-212 (1993), it is in the best interests of the child to terminate the guardianship."  In the Matter of the Guardianship of Jane Doe, 93 Haw. 374, 4 P.3d 508 (2000).

. . . .

[D]5.  Given [Mother's] limited involvement with her children and her demonstrated lack of knowledge or ability to take into account their emotional and special needs as discussed herein, the parental preference contained HRS § 571-46(1) is rebutted.  Once this preference is rebutted [Mother] needs to bring forth specific evidence to show she is will[ing and] able to provide for the children's emotional and special needs.

[D]6.  HRS § 571-46(b) provides a non-exhaustive list of factors for the Court to consider when determining the best interests of a child.

. . . .

[D]8.  HRS § 571-46(b)(2) - Based on the evidence and testimony which provide the basis for the Findings of Fact, there is a history of neglect or emotional abuse of a child, which makes this factor weigh in favor of the Co-Guardians.

[D]9.  HRS § 571-46(b)(3) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the overall quality of the party-child relationship weighs in favor of the Co-Guardians.

[D]10.  (HRS § 571-46(b)(4) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the history of caregiving or parenting by each party prior and subsequent to a [marital] or other type of separation weighs in favor of the Co-Guardians.

[D]11.  (HRS § 571-46(b)(5) - Based on the evidence and testimony which provide the basis for the Findings of Fact,

the cooperation in developing and implementing a plan to meet the children's ongoing needs, interests and schedule, weighs in favor of the Co-Guardians.

[D]12. (HRS § 571-46(b)(6) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the physical health of the children does not weigh in favor of any party as both parties scan [sic] meet the children's physical needs.

[D]13. (HRS § 571-46(b)(7) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the emotional health of the children weighs in favor of the Co-Guardians.

[D]14. (HRS § 571-46(b)(8)- Based on the evidence and testimony which provide the basis for the Findings of Fact, the safety needs of the children do not weigh in favor of any party.

[D]15. (HRS § 571-46(b)(9) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the Court has serious concerns regarding [Mother's] ability or willingness to fully take into consideration and incorporate [TE's] needs both educationally and psychologically. Therefore, the educational needs of the children weigh in favor of the Co-Guardians.

[D]16. (HRS § 571-46(b)(10) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the children's relationship with siblings to [sic] do not weigh in favor of any party.

[D]17. (HRS § 571-46(b)(11) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the Co-Guardian's actions demonstrate that they allow the children to maintain family connections through family events and activities. The Court was concerned that [Mother] would not encourage the relationship between the children and Co-Guardians if the Guardianship was terminated. Therefore, this best interest factor weighs in favor of the Co-Guardians.

[D]18. (HRS § 571-46(b)(12) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the Co-Guardian's demonstrated that they separate the children's needs from their own. Whereas [Mother's] behavior indicated a need to see to her own needs over the best interests of her children. As such, this best interest factor weighs in favor of the Co-Guardians.

[D]19. (HRS § 571-46(b)(14)- Based on the evidence and testimony which provide the basis for the Findings of Fact, the Court determined that the mental health of [Mother] would likely adversely affect her ability to parent. No similar determinations were made regarding the mental health of the Co-Guardians, therefore this best interest factor weighs in favor of Co-Guardians.

[D]20. (HRS § 571-46(b)(15) - Based on the evidence and testimony which provide the basis for the Findings of Fact, the area and levels of conflict present within the family did not weigh in favor of any party.

[D]21. Based on the above best interest factors, the Unlimited Guardianship is in the children's best interest.

16

[D]22. HRS § 560:5-112(c) provides that the "court may appoint an additional guardian or conservator at any time, to serve immediately or upon some other designated event." The statute does not provide the need for an additional finding regarding the parental fitness or ability to parent.

[D]23. It is in the children's best interest that [GK] be added as a Co-Guardian to ensure the care and stability for the children.

[D]24. [Mother] has not provided sufficient evidence to show she is able to provide for the children's emotional and special needs nor has she presented facts to show that it is in the children's best interest that the Guardianship be terminated.

The challenged FOFs for the Relocation Order are as follows:

[E]25. Nothing in the Court's Order issued on January 27, 2023 was predicated on where the Co-Guardian's and children lived.

. . . .

[E]27. The fact that the Co-Guardians were asking the Court to move to Kalamazoo, Michigan was not enough to change the outcome as the Court was aware of the potential for a move due to the loss of Guardian's employment.

The challenged COLs for the Relocation Order are as follows:

[E]1. The Court previously determined that the Guardianship was in the children's best interest pursuant to HRS § 571-46(b). Where the children and Co-Guardians live does not change the application of the best interest factors, nor the finding that it is in the best interest of the children that the children remain with the Guardian and Co-Guardian.

[E]2. The Court concludes that it is in the best interest of the children that the Guardian, Co-Guardian and the children be allowed to move to Michigan so they can remain as a stable family unit.

[E]3. The Court concludes that the area where the Guardian and Co-Guardian propose to move is suitable and can provide for the needs of the children.

[E]4. A request for a new trial under HFCR 59 requires the court to consider if the new evidence could have been discovered through due diligence and whether the new evidence is material enough to change the outcome. Where the children lived was not a material factor in Order issued January 27, 2023. Therefore, new information in this issue was not material, nor would it have changed the outcome.

[E]5. Pursuant to HFCR 52(b) objections were raised to the language that Mother, "gave up the right to parent" in the Order issued January 27, 2023. The Court finds that this is not a material issue in its decision. The Court considered the best interests factors in HRS § 571-46. This particular

sentence was used to show that in previous hearings, Mother stopped being the custodial parent by voluntary action.

[E]6.  The Court at its discretion did not apply the portion of HRS § 560:5-112(b), "or other good cause," for removing a guardian, since no facts were present to support a conclusion that good cause exists to remove the Guardian.

[E]7.  The request for a Stay is denied because equity favors maintaining relationships with guardians and a Stay would not be in the best interests of the children.

### III.  APPLICABLE STANDARDS OF REVIEW

Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Interest of AA, 150 Hawaiʻi 270, 283, 500 P.3d 455, 468 (2021) (citation omitted).  "The family court's conclusions of law are reviewed *de novo* under the right/wrong standard."  Id.

The Hawaiʻi Supreme Court stated in In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 239, 151 P.3d 717, 720 (2007) (cleaned up):

[The appellate court] reviews questions of constitutional law *de novo* under the "right/wrong" standard and, thus, exercises its own independent constitutional judgment based on the facts of the case.  [The appellate court], as a general matter, has long adhered to the proposition that (1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable.

Hawaiʻi Family Court Rules (**HFCR**) Rule 61 provides:

**Rule 61  Harmless Error.**  No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

IV.   DISCUSSION

A.   Applicable Standard for Guardianship Motions

Appellants argue, variously, that the Family Court erred with respect to the appropriate standard for determining the Guardianship Motions.  We evaluate each of these arguments.

Appellants both argue that under HRS § 560:5-112, a guardianship of a minor may be terminated for good cause.[4]

HRS § 560:5-112 falls under part 1 of HRS article 560:5, which contains the general provisions for guardianships.[5] It provides that an interested person may petition for removal of a guardian on the grounds that removal would be in the best interest of the ward or for other good cause.  HRS § 560:5-112(b).  Part 2 of article 560:5 contains the provisions for guardianships of minors.  HRS § 560:5-210 provides for the termination of and other proceedings after appointment of a guardianship of a minor:

> § 560:5-210  Termination of guardianship; other proceedings after appointment.
>
> . . . .
>
> (b) A ward or a person interested in the welfare of a ward may petition for any order that is in the best interest of the ward.

---

[4]   Mother argues that the Family Court is permitted to terminate the guardianship for good cause if the Family Court finds that Mother is currently willing and able to raise the Children.  SK argues that HRS § 577-7(a)'s provision establishing parental control over the conduct and education of one's children is good cause requiring the Family Court to terminate the guardianship.  We do not reach these arguments because, as discussed *infra*, HRS § 560:5-112 does not apply here.

[5]   Chapter 560 contains the Uniform Probate Code provisions, and article V of chapter 560 further contains the provisions for guardianship and protective proceedings.  HRS § 560:5-101 (2018).  Part 1 of article V contains the article's general provisions.  H. Stand. Comm. Rep. No. 597, in 2004 House Journal.  Part 2 contains provisions for guardianships of minors.  Id. Part 3 contains provisions for guardianships for incapacitated persons.  Id.  Part 4 covers conservatorships for both minors and adults.  Id.

The Hawaiʻi legislature enacted HRS § 560:5-210 when it adopted the 1998 Uniform Guardianship and Protective Proceedings Act (**UGPPA**). 2004 Haw. Sess. Laws Act 161 § 1; H. Stand. Comm. Rep. No. 597, in 2004 House Journal. The commentary to the UGPPA clarifies that "[s]ubsection (b) can be used to seek termination of the guardianship or restrict the guardian's powers[.]" Unif. Guardianship Prot. Proc. Act § 210 cmt. (1997). Accordingly, an interested person may petition for any order, including for termination or modification of the guardianship, that is in the best interest of the minor.

Because HRS § 560:5-210 is more specific to guardianship of minors, it controls over the more general HRS § 560:5-112 provision. See In re R Children, 145 Hawaiʻi 477, 485, 454 P.3d 418, 426 (2019) ("[S]pecial or particular provisions control over general provisions, terms or expressions. . . . It is also elementary that specific provisions must be given effect notwithstanding the general provisions are broad enough to include the subject to which the specific provisions relate."). Therefore, under HRS § 560:5-210(b), the guardianship of a minor may be terminated or modified when it is in the best interest of the minor.

Within this best interest standard, there is the established presumption that a fit parent will act in the best interest of their child. See Troxel v. Granville, 530 U.S. 57, 69 (2000). Accordingly, even when conducting a best interest analysis in the context of a statute that does not expressly provide for preference to a fit parent's decisions, the court must uphold a rebuttable presumption in favor of the decisions of

20

a fit parent.  See Doe v. Doe, 116 Hawaiʻi 323, 333, 172 P.3d 1067, 1077 (2007) (requiring court to give special weight to visitation decisions of fit custodial parent in context of grandparent visitation statute's best interest standard); In re Guardianship of Doe, 93 Hawaiʻi 374, 385-86, 4 P.3d 508, 519-20 (App. 2000) (interpreting parental preference into guardianship statute's best interest standard).

Appellants argue that HRS § 560:5-210 is unconstitutional as written and as applied to this case on the grounds that the best interest of the child standard is insufficient in proceedings when a parent who has not been adjudicated unfit petitions to terminate a limited guardianship established with parental consent.  Appellants contend that the harm to the child standard is constitutionally required in this case, and because such a standard cannot be read into HRS § 560:5-210 without making a substantive amendment to the statute, HRS § 560:5-210 is unconstitutional as written and as applied.

"Every enactment of the legislature is presumptively constitutional, and the party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt." A.A. v. B.B., 139 Hawaiʻi 102, 107, 384 P.3d 878, 883 (2016) (cleaned up).  Parents have a substantive liberty interest in the care, custody, and control of their children protected by article I, sections 5 and 6 of the Hawaiʻi Constitution, and the due process clause of the United States Constitution.  Doe v. Doe, 116 Hawaiʻi at 334, 172 P.3d at 1078; In re Doe, 99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002); Troxel, 530 U.S. at 65.  As noted, there is a presumption that a fit parent will act in the best

interest of their child.  Troxel, 530 U.S. at 69.  Accordingly, if a fit parent's decision regarding their child becomes subject to judicial review, the court "must accord at least some special weight to the parent's own determination."  Id. at 70.

The supreme court concluded that the best interest standard in HRS § 571-46.3 (Supp. 2003),[6] Hawaii's grandparent visitation statute, was unconstitutional because it did not include a harm to the child standard.  116 Hawaiʻi at 336, 172 P.3d at 1080.  The court held that a parent's fundamental right to direct the upbringing of their child is implicated where a non-parent third party petitions for visitation, and the State cannot "interfere with the parent's decision absent a finding that the parent's decision to deny access to the child would result in harm to the child."  A.A. v. B.B., 139 Hawaiʻi at 111, 384 P.3d at 887 (discussing Doe v. Doe, 116 Hawaiʻi at 336, 172 P.3d at 1080).

However, the harm to the child standard applies to protect parental rights in proceedings where the parent's fitness is not at issue.  Doe v. Doe, 116 Hawaiʻi at 333, 172 P.3d at 1077 (determining constitutionally required standard for visitation decisions where custodial parent's fitness has not

---

[6]    HRS § 571-46.3 provided in relevant part:

**§ 571-46.3  Grandparents' visitation rights; petition; notice; order.**  A grandparent or the grandparents of a minor child may file a petition with the court for an order of reasonable visitation rights.  The court may award reasonable visitation rights provided that the following criteria are met:

(1) This State is the home state of the child at the time of the commencement of the proceeding; and

(2) Reasonable visitation rights are in the best interests of the child.

22

been challenged); SC v. JC, 151 Hawaiʻi 153, 162, 509 P.3d 1116, 1125 (App. 2022) ("We hold that Doe's harm-to-the-child standard applies in these circumstances, where Father, as a custodial parent whose fitness has not been challenged, seeks to modify a visitation order entered in favor of non-parent third parties, i.e., Maternal Grandparents."); accord Troxel, 530 U.S. at 68-69 ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").  The traditional presumption that a parent acts in the best interest of their child applies to fit parents, not to parents who have been deemed unfit.  See Troxel, 530 U.S. at 69-70.

In this case, Mother's fitness is the crux of the Family Court's Guardianship Order.  The Family Court determined that Mother is not able to parent the Children, i.e., is unfit,[7] and therefore the parental preference in favor of Mother is rebutted.  The Family Court then concluded that Mother must demonstrate that she is able to provide for the Children's needs, and conducted the best interest analysis without the parental preference in favor of Mother.  Accordingly, because the Family Court found Mother to be unfit, Mother was not entitled to the presumption that she acts in the best interest of the Children, and the Family Court need not give special weight to her

---

[7]     See In re Doe, 95 Hawaiʻi 183, 192, 20 P.3d 616, 625 (2001) (indicating that a parent being "unfit," is "in other words, both that the parent is unwilling or unable to provide his or her child with a safe family home . . . and that the parent will not become willing or able to do so within a reasonable period of time.").

preferences in determining what is in the best interest of the Children. See Troxel, 530 U.S. at 70. Therefore, Mother has not established that the Family Court applied HRS § 560:5-210(b) to this case in an unconstitutional manner. We will address, *infra*, whether the Family Court erred in finding that Mother is not able to parent the Children.

Mother's argument that HRS § 560:5-210(b) is facially unconstitutional also fails. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). An appellate court determining the constitutionality of a statute must "interpret [the] statute so as to preserve its constitutionality whenever feasible." Doe v. Doe, 116 Hawaiʻi at 331, 172 P.3d at 1075.

The grandparent visitation statute in Doe v. Doe was deemed facially unconstitutional because the apparent purpose of the statute was to allow grandparents to circumvent the decisions of parents, and thereby "undermine[] a parent's judgment to not allow grandparents access to one's child based merely on a finding that grandparent visitation was in the child's best interests." A.A., 139 Hawaiʻi at 114, 384 P.3d at 890 (discussing Doe v. Doe, 116 Hawaiʻi at 332 n.6, 172 P.3d at 1076 n.6). No such legislative purpose to circumvent parental decisions exists for HRS § 560:5-210. See H. Stand. Comm. Rep. No. 597, in 2004 House Journal (providing that guardianships should be "viewed as a last resort"). Rather, as discussed

24

*infra*, the court may only override parental consent to form a guardianship upon a finding that all parental rights have actually been or meet the requirements to be terminated.  See HRS § 560:5-204 (2018).  Accordingly, there are multiple circumstances in which the court would not need to afford special weight to a parent's decisions in guardianship proceedings under HRS § 560:5-210 because the parent's rights had already been terminated or they had been adjudicated unfit.  See id.  Therefore, HRS § 560:5-210 is not facially invalid.

Appellants challenge the Family Court's appointment of GK as co-guardian under HRS § 560:5-112(c), which provides that the court "may appoint an additional guardian or conservator at any time, to serve immediately or upon some other designated event[.]"  HRS § 560:5-112 provides for when the court can appoint a co-guardian, *i.e.*, "at any time," whereas HRS § 560:5-204 provides the conditions for the appointment of a guardian for a minor.  HRS § 560:5-204 provides in relevant part:

> **§ 560:5-204  Judicial appointment of guardian; conditions for appointment.**
>
> . . . .
>
> (b) The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:
>
>> (1) The parents consent;
>>
>> (2) All parental rights have been terminated; or
>>
>> (3) The parents are unwilling or unable to exercise their parental rights.

Accordingly, if a parent does not consent to the appointment of a guardian, as here, the Family Court may only appoint the guardian if it finds that the appointment is (1) in the minor's best interest, and (2) all parental rights have been

25

terminated or the parents are unwilling or unable to exercise their parental rights. Id. The Family Court erred to the extent that it determined HRS § 560:5-112(c) permitted it to add GK as a co-guardian.

However, such error may be harmless because the Family Court found that Mother is not able to parent the Children. See HFCR Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Appellants further argue that the Family Court wrongfully applied the preponderance of the evidence standard, rather than the clear and convincing evidence standard, in determining the Guardianship Order.

The clear and convincing standard of proof serves "to protect particularly important individual interests in various civil cases." Woodruff v. Keale, 64 Haw. 85, 100, 637 P.2d 760, 770 (1981) (quoting Addington v. Texas, 441 U.S. 418, 424 (1979)). In other words, this standard applies where "[t]he interests at stake . . . are deemed to be more substantial than mere loss of money." Addington, 441 U.S. at 424. On the other hand, the preponderance of the evidence standard applies where society has a minimal concern with the outcome of the suit, and the parties should thus "share the risk of error in roughly equal fashion." Id. at 423.

The ICA previously held that the preponderance standard of proof applies to determining whether a natural parent is unfit when appointing a guardian. In re Guardianship of Doe, 106 Hawaiʻi 75, 78, 101 P.3d 684, 687 (App. 2004). The ICA made this

26

holding based on the 1993 version of HRS §§ 560:5-204 (1993)[8] and 560:5-206 (1993),[9] which provided that the only condition for the appointment of a guardian for a minor was if the appointment would be in the best interests of the minor. The ICA reasoned that a guardianship differs from termination of parental rights because a guardianship is neither absolute nor irrevocable. In re Guardianship of Doe, 106 Hawaiʻi at 78, 101 P.3d at 687. While a guardianship of a minor bestows the powers and responsibilities of a parent, the guardianship nevertheless remains "subject to residual parental rights and responsibilities," such as the right to reasonable visitation, consent to adoption or marriage, and the responsibility for support. Id. Additionally, a guardian always remains subject to removal. Id.

However, although a guardianship may not absolutely and irrevocably supersede all the rights of a parent, it certainly supersedes many of these parental rights, such as the right to the custody of and to provide care for the child. See HRS

---

[8]    HRS § 560:5-204 (1993) provided in relevant part:

> **§ 560:5-204 Court appointment of guardian of the person of minor; conditions for appointment; letters; priority of testamentary nominee.** The family court may appoint any competent person whose appointment would be in the best interest of the minor as a guardian of the person for an unmarried minor. . . .

[9]    HRS § 560:5-206 (1993) provided in relevant part:

> **§ 560:5-206  Court appointment of guardian of the person of minor; qualifications; priority of minor's nominee.** Subject to the provisions of section 560:5-204, the family court may appoint as guardian of the person of a minor any competent person whose appointment would be in the best interests of the minor, provided, however, if the minor is fourteen years of age or older, the minor may nominate any competent person and the minor's nominee shall have priority unless the family court finds the appointment contrary to the best interests of the minor.

27

§ 560:5-208(a) (2018) ("Except as otherwise limited by the court, a guardian of a minor ward has the powers of a parent regarding the ward's support, care, education, health, and welfare."); 39 Am. Jur. 2d Guardian and Ward § 90 (2025) ("Until the guardianship of a minor child is terminated, the guardian's right to custody of the minor is superior to that of the minor's parent.").  Therefore, the fundamental liberty interest of a parent in the care, custody, and control of their child is implicated in guardianship proceedings.

Since the In re Guardianship of Doe decision, the Hawaiʻi legislature repealed the guardianship of a minor provisions, HRS § 560:5-201 to -212, and adopted the 1998 UGPPA in their place.  2004 Haw. Sess. Laws Act 161 § 1; H. Stand. Comm. Rep. No. 597, in 2004 House Journal.  The legislative history of Act 161 indicates that guardianships should be "viewed as a last resort," and that "[o]nly when no alternative to guardianship . . . is available should the court create a guardianship."  H. Stand. Comm. Rep. No. 597, in 2004 House Journal.

Consistent with these principles, the legislature enacted HRS § 560:5-204 (Supp. 2004),[10] which imposes additional

---

[10]     HRS § 560:5-204 provides in relevant part:

**§ 560:5-204  Judicial appointment of guardian; conditions for appointment.**

. . . .

(b) The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:

(1) The parents consent;

(2) All parental rights have been terminated; or

(continued...)

28

conditions on the appointment of a guardian.  The Family Court must not only find that the appointment is in the best interest of the child, but also find that the parents consent, all parental rights have been terminated, or the parents are unwilling or unable to exercise their parental rights.  Id. Notably, under HRS § 587A-33 (2018), an individual's parental rights are terminated upon the Family Court's determination that clear and convincing evidence exists that the parent is unwilling and unable to provide the child with a safe family home, and it is not reasonably foreseeable that the parent will become able to do so within a reasonable period of time.  Accordingly, a court may only override the requirement of parental consent to appoint a guardian if parental rights have been terminated or the parent meets the requirement for termination of parental rights.  See id.

The legislature did not specify the standard of proof in determining whether parents are unwilling or unable to exercise their parental rights in guardianship proceedings.  2004 Haw. Sess. Laws Act 161 § 1.  In light of the fundamental liberty interests at play and the legislative history indicating that guardianships should be viewed as a last resort, we hold that the court may override parental consent in a proceeding to appoint a guardian or to terminate a guardianship created by parental consent only if it finds by clear and convincing evidence that the parent is unfit, i.e., is unwilling or unable to exercise their parental rights.

---

[10](...continued)
> (3) The parents are unwilling or unable to exercise their parental rights.

29

We therefore conclude that the Family Court applied the wrong standard of proof. We will address, *infra*, whether the Family Court's misapplication of the standard of proof was harmless error.

B.    The MSJ

Appellants argue that Mother was entitled to summary judgment because Guardian admitted via her failure to respond to Mother's Request for Admissions that Mother is a fit parent with a stable and wholesome home. However, the supreme court has held that a trial court's denial of summary judgment based on its finding that genuine issues of material fact existed is not reviewable on appeal. Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 209-11, 124 P.3d 943, 954-56 (2005); Ching v. Case, 145 Hawaiʻi 148, 169 n.36, 449 P.3d 1146, 1167 n.36 (2019). Here, the Family Court denied the MSJ, finding that issues of material fact needed to be decided at trial, including, *inter alia*, Mother's fitness, Mother's ability to provide a safe and stable home, and the best interest of the Children. The denial of the MSJ on this ground is not reviewable.

C.    The Guardianship Order

Appellants argue, *inter alia*, that the GAL Report erroneously gave zero weight and consideration to the constitutional rights of Mother and the constitutional rights of minors. Appellants provide no authority to support the proposition that minors have a constitutional right to be raised by their natural parents, nor did we find any. Accordingly, our analysis focuses on whether the GAL should have considered Mother's constitutional rights.

30

The Family Court appointed the GAL under HRS § 560:5-115 (2018), which provides that "the family court shall state on the record the duties of the guardian ad litem[.]" The Order Appointing GAL directed GAL to "prepare a report for the Court including recommendations in the children's best interests." The GAL's "sole duty is to protect the subject children's needs and interests," which includes the duties to "[a]ct as an independent fact finder," "[a]scertain the interest of the subject children," "[s]eek cooperative resolutions to the subject children's situation within the scope of the subject children's interest and welfare," and "[p]rovide written reports of findings and recommendations[.]" In other words, the GAL fulfills a "child-centered role" as an "advocate for the subject children's interests[.]" It is the duty of the Family Court, not the GAL, to consider other factors appropriate to its ultimate determination.

Nothing in the Order Appointing GAL directed the GAL to consider Mother's constitutional rights. To the contrary, the order expressly stated that the GAL "in no way represents the Guardian, [GK], [Mother] or [SK]." Accordingly, it was not within the scope of the GAL's duties to evaluate and report on Mother's interests, constitutional or otherwise.

Further, the Family Court is not bound by the GAL's findings and recommendations and may, upon considering and weighing all relevant factors, render a decision contrary to a GAL's recommendations. See, e.g., Matter of Adoption of H.A., 143 Hawaiʻi 64, 80-81, 422 P.3d 642, 658-59 (App. 2017) (affirming family court's adoption award against the

31

recommendation of the guardian ad litem). Here, although the GAL did not consider Mother's constitutional rights, the Family Court considered the parental preference in favor of Mother and concluded that the preference was rebutted. Therefore, the Family Court did not err in considering the GAL Report and the Supplemental GAL Report because the reports did not address Mother's constitutional rights.

Mother challenges, *inter alia*, FOF D6 wherein the Family Court found that Mother is not able to parent the Children and conducted its best interest analysis in light of that finding, ultimately concluding that the parental preference in favor of Mother was therefore rebutted.

As discussed *supra*, the Family Court erred in applying the preponderance of the evidence standard, rather than the clear and convincing evidence standard, in determining that Mother is unable to parent the Children. We now address whether the misapplication of the standard of proof was harmless. HFCR Rule 61; <u>e.g.</u>, <u>State v. Miller</u>, 84 Hawaiʻi 269, 279-80, 933 P.2d 606, 616-17 (1997) (affirming circuit court order based on determination that application of wrong standard of proof was harmless); <u>cf.</u> <u>In re Guardianship of Doe</u>, 106 Hawaiʻi at 79, 101 P.3d at 688 (vacating and remanding order denying appointment of guardian because application of wrong standard of proof was dispositive below).

The Family Court in challenged FOF D8 found GAL's testimony that Mother is not able to parent the Children credible and supportable by other evidence, and gave it weight. The GAL indicated in her testimony that the factors she gave the most

32

weight to were the Children's emotional needs and educational needs, particularly TE's, and the history of caregiving. The Family Court further indicated in COL D5 that it determined that the custody presumption in favor of Mother was rebutted due to "[Mother's] limited involvement with her children and her demonstrated lack of knowledge or ability to take into account their emotional and special needs[.]" Accordingly, it appears that these were the primary factors in the Family Court's determination that Mother is unfit. We address these issues accordingly.

Appellants challenge FOFs D17-D19 as well as D47. These concern Mother's involvement and communication with the Children during the unlimited guardianship on Kauaʻi, and the limited guardianship in Oregon.

By Mother's own admission, her contact with the Children on Kauaʻi during the unlimited guardianship – in place prior to the July 2020 Stipulation – was sporadic. The Family Court found in the unchallenged FOF D48 that once the Children moved to Oregon, Mother's time with the Children became more dependable. For example, both the GAL Report and the Guardians' testimony indicate that Mother's contact with the Children increased in frequency in 2022. The GAL Report indicated that Mother's monthly texts with the Children increased to between ten and twenty-two times from December 2021 to February 2022. GK's testimony indicated that starting in September 2022, Mother called the Children every day. Additionally, Mother has consistently exercised her custodial time with the Children since the limited guardianship began.

Accordingly, the record indicates that notwithstanding Mother's inconsistent contact with the Children during the initial unlimited guardianship, Mother substantially increased the frequency and consistency of her contact throughout the limited guardianship and after she began her efforts to regain custody of the Children.

Appellants also challenge FOFs D7, D55-56, and D71 concerning Mother's ability to meet the Children's emotional needs. GAL testified that both Children's emotional needs are "heightened."

Based on the evidence presented at trial, it appears that IW's emotional needs have little to do with Mother's ability or inability to meet those needs, but rather focus on the degree of attachment to Guardians, and in particular to Guardian. The GAL testified that due to this attachment, IW could suffer emotional harm simply by reducing her time under Guardian's care, regardless of the ability of the new primary caregiver. GAL's assessment of Mother's inability to meet the Children's emotional needs also relied on Mother's lack of a stated therapeutic plan and lack of involvement with the Children's therapy during the guardianship. However, Mother has testified that she would continue therapy for both Children, but it was difficult to put a specific plan in place given the guardianship.

Challenged FOFs D7, D55, D59, D64, D65, D93, D95-D97, and D131 concern Mother's ability to meet the Children's educational and/or special needs. However, the GAL indicated that IW would be able to attend school on Kauaʻi at grade level and perform academically, and that Mother understands IW's

educational needs.  Much of the testimony regarding the Children's educational needs centered around TE's special needs.

TE has been diagnosed with autism and ADHD.  As a result, TE initially had a 504 Plan and then an IEP.  GAL and Dr. Dianne Gerard, a Kauaʻi psychologist, testified that TE's special needs require a high level of care and structure as well as medication management.  GAL expressed concern regarding Mother's ability to meet TE's educational needs due to Mother's issues with timeliness, Mother's lack of involvement with TE's 504 or IEP and autism services, and TE's medication management.

The record indicates that Mother has had limited involvement with the Children's education while the Guardian had unlimited authority over the Children's education.  GAL testified that she believed Mother does not have the ability to understand TE's IEP due to her lack of involvement.  Although Mother has been kept generally informed about the Children's education, it does not appear that she has been invited to participate.  Mother indicated that she has contacted schools about educational options for the Children, and that she would seek out services for TE's special needs if the guardianship were to be terminated. Mother explained that she did not have a "set-in-stone plan" for the Children's education because "it's so up in the air at this point what's happening with them."

GAL, Mother, and Guardian have all recognized that Mother has had issues regarding being late to pick up the Children.  GAL expressed concern regarding Mother's ability to meet TE's educational needs due to Mother's issues with timeliness.  Dr. Gerard stated that she felt it would be "fairly

dangerous" for the guardianship to be changed because TE's needs for structure and supervision "might well not have been matched by his mother." GAL observed TE becoming agitated when Mother was late to pick him up.

Guardian also testified that when TE returned from staying with Mother over a summer, he had not taken 23 out of 30 capsules of his ADHD medication. Mother explained that she did not force TE to take his ADHD medication over the summer because her understanding was that the medication was for "school purposes." TE also experienced "sensory overload" issues in Mother's house in summer 2021, but the situation was improved in summer 2022. Mother stated that she has discussed additional options to help manage TE's sensory issues.

Overall, the record indicates that Mother's involvement in the Children's education and TE's special needs services was limited while Guardian held educational authority over the Children. It appears that Mother is willing to ensure that TE is provided with services to meet his special and educational needs, but that Dr. Gerard and GAL were nevertheless concerned about Mother's ability to do so. There was no evidence contrary to Mother's testimony that issues with TE's medication administration was due to Mother's misunderstanding about the purpose of the medication. Mother may have issues with timeliness and structure, but such issues are not to the extent that she is clearly unwilling and unable to parent the Children.

For these reasons, we cannot conclude that the evidence supporting the Family Court's decision was so overwhelming that the misapplication of the lower preponderance standard to the

issue of Mother's ability to meet the Children's educational and special needs was harmless.

Therefore, the Family Court's application of the preponderance standard, rather than the clear and convincing standard, to the issue of Mother's fitness to parent the Children was not harmless, and Mother's substantial rights were therefore prejudiced. We vacate in part and remand the Guardianship Order to the Family Court for further proceedings consistent with this Memorandum Opinion. See In re Guardianship of Doe, 106 Hawaiʻi at 79, 101 P.3d at 688 ("[T]he weighing of the proper quantum of proof of the natural father's unfitness *vel non*, as between the contrapuntal considerations found by the family court in the evidence adduced . . . remains with the family court."). Notwithstanding our determination that the Guardianship Order must be vacated, in order to ensure relative stability for the Children pending further proceedings, which may take into consideration any changes in circumstances, we vacate only in part so that the Guardianship Order will remain in effect pending the outcome of the further proceedings before the Family Court.

D. GAL Clarification Order

Appellants argue that the Family Court erred by sanctioning SK with the GAL Clarification Order fees because, *inter alia*, it did not cite to any authority allowing it to do so, the Order Appointing GAL provided that Guardian shall pay the GAL's costs, and there was no finding of bad faith. Appellants challenge FOFs B9 and B10 and COLs B1 and B2 in conjunction with their arguments.

The Order Appointing GAL provided that the GAL was appointed pursuant to HRS § 560:5-115, which specifically provides for the compensation of a GAL, stating in relevant part:

> **§ 560:5-115  Guardian ad litem**. . . . Persons appointed by the court or the family court, as applicable, to serve as guardians ad litem or to perform any other duties that may be requested by the court in guardianship and protective proceedings shall be compensated in the amounts, if any, that the court deems appropriate and reasonable.  Any such compensation shall be paid from the respondent's assets or other source under the jurisdiction of the court or the family court as it shall order.

Accordingly, the Family Court had the authority to order the parties to pay GAL's fees under HRS § 560:5-115, without a separate motion or finding of bad faith for the Family Court to order such compensation.

The Order Appointing GAL provided that Guardian shall front the cost of the GAL, and that it would later determine whether other parties shall be ordered to reimburse Guardian for the cost of the GAL, in whole or in part.  However, the order did not preclude the Family Court from otherwise exercising its authority under HRS § 560:5-115 based on particular circumstances.  Unchallenged FOFs B1 to B4, B7, and B8 for the GAL Clarification Order provide:

> 1. The GAL filed a Motion on April 26, 2023, seeking clarification and direction from the Court regarding a request for information from [SK].
>
> 2. In her Motion, the GAL included the text of [SK's] request, which sought for the GAL to provide him with all documents and information that was considered and/or disregarded by the GAL when making her recommendations.
>
> 3. The GAL asked the Court to clarify this request as the GAL found the request to be very broad and asking for information not considered.
>
> 4. A hearing on the Motion was held on May 18, 2022.
>
> . . . .
>
> 7. The GAL and [SK] engaged in dialogue with the Court regarding his request.

8. Through the discussion with the Court, the GAL and [SK] reached an understanding regarding what information held by the GAL should be turned over to [SK].

Upon review, we conclude that the Family Court did not abuse its discretion in ordering SK to pay the GAL's fees at issue.

E.   Order to Amend Tax Return

Appellants argue that the Family Court erred in ordering Mother to amend her 2021 tax return because the Children resided with Mother during the entire 2021 calendar year except that they were temporarily absent for the purpose of attending school in Oregon.  Appellants challenges FOFs C17, C(18)(d), C19, and C20, and COL C2 in conjunction with that argument. Appellants further argue, *inter alia*, that the Family Court erred by acting outside its discretion because it lacked the authority to compel Mother to amend her tax returns.

The Family Court based its determination on the parties' relative support of Children and time of custodial care. We have recognized the Family Court's authority to authorize a party to claim the annual tax deduction for a dependent child. See, e.g., Spencer v. Spencer, No. 30320, 2011 WL 4537845, *1 n.2 (Haw. App. Sept. 30, 2011) (SDO) (noting that dependent tax exemption for a child is usually awarded to custodial parent, unless it is waived).  Accordingly, we cannot conclude that the Family Court erred in ordering Mother to amend her 2021 tax return and not declare the Children as dependents in future tax returns.[11]

---

[11]   To be clear, the "future returns" issue is subject to amendment if there is a further change in primary custody.

F.     Motion for New Trial and Relief

Mother argues that Guardian intentionally concealed her application for employment in Michigan during the trial, which deprived Mother and SK from discovering any evidence related to Guardian's plans and ability to provide for the best interests of the Children in Michigan.  SK argues that the Family Court erred by failing to order a new trial on the grounds that Guardians were contemplating a move from Oregon to Michigan while trial was still pending, and this information was not revealed at the time of trial.  Because we are already vacating in part and remanding the Guardianship Order, we need not reach the issue of whether the Family Court abused its discretion in denying a new trial.

Appellants further argue that the Family Court erred in granting the Motion to Relocate without first assessing whether Mother's rights would be affected by granting Guardians' motion to move the Children from Oregon to Michigan.  Appellants challenge FOFs E25 and E26 and COLs E1-E7 in conjunction with these arguments.  Appellants also argue that Mother's constitutional and statutory rights were deprived without an opportunity to be heard when the Family Court issued the Ex Parte Order to Verify Return Flights, ordering Mother to verify the Children's return flights to Michigan.

As indicated in COLs E1 to E4, the Family Court granted the Motion to Relocate based primarily on its previous determination that the guardianship was in the best interest of the Children.  The Family Court conducted its best interest analysis in light of its finding that Mother was unfit to parent the Children and that the parental preference in favor of Mother

40

was rebutted. As we have already decided to vacate in part the Guardianship Order we also vacate and remand the Relocation Order and the Ex Parte Order to Verify Return Flights for further proceedings consistent with this Memorandum Opinion.

V. <u>CONCLUSION</u>

For the foregoing reasons, the Family Court's June 22, 2022 Order Denying MSJ, the June 22, 2022 GAL Clarification Order, and the June 22, 2022 Order to Amend Tax Return are affirmed. The Family Court's January 27, 2023 Guardianship Order, the April 25, 2023 Relocation Order, and the July 18, 2023 Ex-Parte Order to Verify Return Flights are vacated, to the extent described herein. This case is remanded to the Family Court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, November 18, 2025.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard<br>Presiding Judge |
| Michael A. Glenn,<br>for Petitioner-Appellant SW. | /s/ Keith K. Hiraoka<br>Associate Judge |
| SK, Petitioner-Appellant,<br>pro se. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Kai Lawrence,<br>for Guardians-Appellees. | |
| Sianha M. Gualano,<br>Deputy Solicitor General,<br>on the amicus curiae brief<br>for the Attorney General of the<br>State of Hawaiʻi. | |