101 P.3d 684

### In the Matter of the GUARDIANSHIP OF John DOE, Born on July 18, 1998, a Minor.

### No. 25973.

Intermediate Court of Appeals of Hawai'i.

Nov. 9, 2004.

Bradley R. Chong, Honolulu, on the briefs, for petitioners-appellants.

John V. Kendrick, on the briefs, for respondents-appellees.

BURNS, C.J., LIM and FUJISE, JJ.

Opinion of the Court by LIM, J.

Maternal grandmother and grandfather (collectively, the Grandparents) appeal the July 9, 2003 order of the family court of the first circuit,[1] made upon findings of fact and conclusions of law entered on June 17, 2003, that denied their January 9, 2003 petition for co-guardianship of the person of their then four-year-old grandson.[2] The Grandparents

---

1. The Honorable William J. Nagle, III, judge presiding.

2. Hawai‘i Revised Statutes (HRS) § 560:5–204 (1993) provides:

   The family court may appoint any competent person whose appointment would be in the best interest of the minor as a guardian of the person for an unmarried minor. The appointment shall be evidenced by letters of guardianship. Such guardian may be nominated by the will of the minor's parent, and the family court shall give preference to any such nominee. The family court may appoint someone other than the testamentary nominee upon a showing of cause.

   HRS § 560:5–209 (1993) provides:

   A guardian of the person of a minor has the powers and responsibilities of a parent who has not been deprived of custody of the parent's minor and unemancipated child, except that a guardian of the person is not legally obligated to provide from the guardian's own funds for the ward and is not liable to third persons by reason of the parental relationship for acts of the ward. In particular, and without qualifying the foregoing, a guardian of the person has the following powers and duties:

   (1) The guardian must take reasonable care of the guardian's ward's personal effects and commence protective proceedings if necessary to protect other property of the ward.

   (2) The guardian may receive money payable for the support of the ward to the ward's parent, guardian or custodian under the terms of any statutory benefit or insurance system, or any private contract, devise, trust, guardianship or custodianship. The guardian also may receive money or property of the ward paid or delivered by virtue of section 560:5–103. Any sums so received shall be applied to the ward's current needs for support, care and education. The guardian must exercise due care to conserve any excess for the ward's future needs unless a guardian of the property has been appointed for the ward, in which case excess

also appeal the family court's July 9, 2003 order that denied their June 17, 2003 motion for reconsideration.

■ The Grandparents first contend the family court erred in deciding whether the natural father[3] was an unfit parent, *In re Guardianship of John Doe,* 7 Haw.App. 575, 581, 786 P.2d 519, 523 (1990) ("in a contest between the mother and the paternal grandmother for a child's custody, the mother must prevail absent a valid finding that she is not a fit and proper person or has a home that is not stable and wholesome"); *In re Guardianship of Jane Doe,* 93 Hawai'i 374, 381, 4 P.3d 508, 515 (App.2000) (quoting *In re Guardianship of John Doe, supra*), because the family court applied the clear and convincing evidence standard of proof[4] to that question. We agree.

■ The heightened standard of proof is applied in termination of parental rights cases under Hawai'i Revised Statutes (HRS) § 571–61 *et seq.* (1993) because,

> The very act of severing the parent-child relationship is cognizably absolute and irrevocable.... [S]tandards of proof function to indicate the relative importance attached to the ultimate decision and to allocate the risk of error between litigants accordingly.... Termination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relation-

ship by proof more substantial than a preponderance of the evidence.

*Woodruff v. Keale,* 64 Haw. 85, 100–101, 637 P.2d 760, 770 (1981) (citations, internal quotation marks and block quote format omitted). *See also* HRS § 587–73(a) (Supp.2003) (requiring "clear and convincing evidence" before the family court may terminate parental rights in a child protective act permanent plan hearing); *In re Jane Doe,* 95 Hawai'i 183, 192, 20 P.3d 616, 625 (2001) ("the [child protective act, HRS ch. 587 (1993 & Supp. 2003),] does *not* allow for the divestiture of parental rights absent clear and convincing evidence" (emphasis in the original)).

■ While a termination of parental rights is "absolute and irrevocable[,]" *Woodruff,* 64 Haw. at 100, 637 P.2d at 770; *see also In re Jane Doe,* 95 Hawai'i at 192–193, 20 P.3d at 625–26; HRS § 587–2 (1993) (definition of "permanent custody"), "a guardian may be appointed for a minor even where the parental rights of the minor's parents have not been terminated." *In re Guardianship of Jane Doe,* 93 Hawai'i at 383, 4 P.3d at 517.

■ We have held that,

> Because [the] concepts [of custody and guardianship] share common attributes, we construe the custody guardianship provision of HRS § 560:5–209 [ (1993) ] and the custody provision in HRS § 571–46 [ (Supp.2003) ] *in pari materia*[5] in order to

shall be paid over at least annually to the guardian of the property. Sums so received by the guardian of the person are not to be used for compensation for the guardian's services except as approved by order of court or as determined by a duly appointed guardian of the property other than the guardian of the person. A guardian of the person may institute proceedings to compel the performance by any person of a duty to support the ward or to pay sums for the welfare of the ward.

(3) The guardian of the person is empowered to facilitate the ward's education, social, or other activities and to authorize medical or other professional care, treatment, or advice. A guardian of the person is not liable by reason of this consent for injury to the ward resulting from the negligence or acts of third persons unless it would have been illegal for a parent to have consented. A guardian of the person may consent to the marriage or adoption of the guardian's ward.

(4) A guardian of the person must report the condition of the guardian's ward and of the

ward's estate which has been subject to the guardian's possession or control, as ordered by the family court on petition of any person interested in the minor's welfare or as required by court rule.

3. The mother of the minor filed a waiver of notice and consent to co-guardianship on January 24, 2003.

4. *See Woodruff v. Keale,* 64 Haw. 85, 100 n. 9, 637 P.2d 760, 770 n. 9 (1981) ("the Texas Supreme Court defined 'clear and convincing' as 'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established'") (quoting *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979)).

5. We also note that HRS ch. 571 (1993 & Supp. 2003), the omnibus chapter covering the family courts, contains a number of provisions that expressly govern guardianships of the person of a

determine the appropriate standard to be applied where conflicting claims between parents and non-parents are made in a guardianship hearing. *See* HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.").

*Id.* (footnote supplied). Accordingly, we observe that a guardianship of the person of a minor, while it bestows "the powers and responsibilities of a parent who has not been deprived of custody of the parent's minor and unemancipated child," HRS § 560:5–209; *see also In re Guardianship of Jane Doe,* 93 Hawai'i at 382, 4 P.3d at 516 ("guardians of a minor have the powers and responsibilities otherwise inherent in parenthood"); HRS § 571–2 (1993) (definition of "legal custody"), nevertheless remains "subject to residual parental rights and responsibilities[,]" *id.,* meaning "those rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right to reasonable visitation, consent to adoption or marriage, and the responsibility for support." *Id.* (definition of "residual parental rights and responsibilities"); *cf.* HRS § 571–46(7) (Supp.2003) (unless detrimental to the best interests of the child, reasonable visitation rights "shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court"). Furthermore, a guardian of the person of a minor always remains subject to removal, as such. HRS § 560:5–212 (1993); *cf.* HRS § 571–46(6) (Supp.2003) (a custody award "shall be subject to modification or change whenever the best interests of the child require or justify the modification or change").

Hence, a guardianship of the person of a minor is neither absolute nor irrevocable, and the heightened standard of proof attendant upon those attributes of a termination of parental rights need not attend here.[6] We conclude the family court erred in applying a heightened standard of proof to the question of the fitness of the natural father.

The family court found that the Grandparents "have provided the minor child, their grandson, with a home, food[,] shelter, education and affection, together with the minor child's siblings. The Court finds on the basis of the evidence submitted and the lack of any contrary evidence, that they are fit and competent persons to serve as Guardians of the minor child." *See* HRS § 560:5–204 (1993) ("The family court may appoint any competent person whose appointment would be in the best interest of the minor as a guardian of the person for an unmarried minor."); HRS § 560:5–206 (1993) (same); HRS § 560:5–207(b) (1993) (where the family court finds, *inter alia,* that "the requirements of section 560:5–204 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment"); *cf.* HRS § 571–46(2) (Supp.2003) (custody may be awarded to a non-parent "whenever the award serves the best interest of the child. Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody"). The family court concluded that, "It is in the best interest of the minor child to remain with [the Grandparents], and his siblings." *See* HRS § 560:5–204; *cf.* HRS § 571–46(2). And despite the parental preference we recognized in HRS § 571–46(1) (Supp.2003) (custody "should be awarded to either parent

---

minor. *See* HRS § 571–2 (1993) (definitions of "guardianship of the person of a minor," "legal custody" and "residual parental rights and responsibilities"); HRS § 571–11(3) (1993).

**6.** Compare HRS § 571–41(c) (1993), which provides, in pertinent part:

Findings of fact by the judge or district family judge of the validity of the allegations in the petition shall be based upon a preponderance of evidence admissible in the trial of civil cases except for petitions alleging the court's juris-

diction under section 571–11(1) [ (1993) (concerning persons charged with committing or attempting to commit law violations during their minority) ] which shall require proof beyond a reasonable doubt in accordance with rules of evidence applicable to criminal cases; provided that no child who is before the court under section 571–11(1) shall have admitted against the child any evidence in violation of the child's rights secured under the constitution of the United States or the State of Hawai'i.

or to both parents according to the best interests of the child") and applied *in pari materia* to HRS § 560:5–204 petitions, *In re Guardianship of Jane Doe*, 93 Hawai'i at 385–86, 4 P.3d at 519–20, the family court concluded that the natural father "is not now, and will not be a candidate for custody of the minor child for the foreseeable future." *See In re Guardianship of John Doe*, 7 Haw. App. at 581, 786 P.2d at 523; *In re Guardianship of Jane Doe*, 93 Hawai'i at 381, 4 P.3d at 515.

This ostensibly *prima facie* case for the Grandparents notwithstanding, the family court ultimately concluded that the Grandparents

> have not carried their burden of proving that [the natural father] is not a "fit and competent" person, by clear and convincing evidence. [The natural father's] present marriage, and his present employment, along with his completion of a drug treatment course and avoidance of criminal activities, all serve to off set [sic] the evidence against him.
>
> *The Court's decision in this case should not be construed as an endorsement of [the natural father] as a candidate for an award of custody of the minor child. Rather, it is a reflection of the extremely difficult burden of proof undertaken by [the Grandparents] in this Petition.* [The natural father's] problems with the [Bureau of Immigration and Customs Enforcement of the Department of Homeland Security], his failure, refusal and neglect to pay child support for an extended period of time, his lack of contact and frankly his lack of curiosity as to the circumstances of the minor child for the past 15 months lead the Court to conclude that [the natural father] is not now, and will not be a candidate for custody of the minor child for the foreseeable future.

(Enumeration omitted; emphasis supplied.) Clearly, the court's error as to the applicable standard of proof was singularly dispositive below and must remain similarly dispositive on appeal. The Grandparents ultimately urge on appeal that we should reverse the family court and award them guardianship of the person of their grandson on the strength of the *prima facie* case they presented below. However, the weighing of the proper quantum of proof of the natural father's unfitness *vel non*, as between the contrapuntal considerations found by the family court in the evidence adduced, including the evidence of the natural father's criminal record, remains with the family court. HRS § 560:5–207(b).

We therefore vacate the orders and findings of fact and conclusions of law appealed from in this case and remand to the family court for reconsideration consistent with this opinion.