*** FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-23-0000356
16-JUN-2026
09:10 AM
Dkt. 23 OPA

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

IN THE MATTER OF THE GUARDIANSHIP OF I.W. AND T.E.

SCWC-23-0000356

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-23-0000356; CASE NOS. 5GD151000035
and 5GD151000036 (consolidated))

JUNE 16, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ., AND
CIRCUIT JUDGE MORIKONE, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY EDDINS, J.

**I.**

The right of a parent to raise their child is a fundamental liberty at the heart of our state's constitutional tradition. This case explores the status of that interest when a parent consents to guardianship.

The right remains intact.

We hold two things.

First, the rebuttable presumption that a fit parent acts in the best interest of their child extends to guardianship proceedings. Consenting to a guardian's care is not a waiver. The presumption endures despite that consent.

Second, before a family court may set that presumption aside, the due process and privacy protections in article I, sections 5 and 6 of the Hawai'i Constitution require clear and convincing evidence of unfitness.

We affirm the Intermediate Court of Appeals (ICA) in result. The ICA identified the correct standard. But we anchor the standard in the Hawai'i Constitution.

Two further points. Clear and convincing evidence governs fitness. The preponderance of the evidence standard governs the best interest analysis under Hawai'i Revised Statutes (HRS) § 560:5-210(b) (2018) and HRS § 571-46 (2018). And the parental presumption is not a conclusive rule that makes guardianship terminable at will. It is a substantial, but rebuttable, preference that must inform the family court's assessment of the child's best interest.

We return the case to the family court for a fitness determination under the correct standard.

## II.

### A. Factual Background

This is a contested guardianship over two children. Now

2

teenagers, they have lived with their grandparents for nearly a decade.  The grandparents seek to keep and expand their role.  The mother wants to end it.

Toby and Izzy are the biological children of Mother and Father.  (Pseudonyms are used for the minors.)  Mother and Father were never married.  They broke up when Mother was six months pregnant with their second child, Izzy.

Toby is now sixteen.  Izzy is thirteen.

Grandmother is Mother's mother.

In January 2016, when Toby was five and Izzy was two, Mother and Father consented to appoint Grandmother and her husband, Grandfather, as unlimited co-guardians for them.  The guardianship petitions filed by Grandmother and Grandfather (Guardians) stated that "Mother requests assignment of guardianship to petitioners because of inability to care for the [children] due to personal, emotional and financial issues."

Mother testified that she was then unemployed, on food stamps, without stable housing, and not "in the best position . . . to meet [the children's] needs and to care for them."  She viewed the arrangement as temporary.

Over four years later, in March 2020, Mother and her boyfriend filed petitions to terminate the children's guardianships.

Within two months, Grandmother and Grandfather moved the family court to relocate the children from Kauaʻi to Oregon, citing Grandmother's loss of work during the COVID-19 pandemic. After mediation, the parties stipulated in July 2020 that Grandfather would resign as co-guardian; Grandmother would continue as a limited guardian; and the children would move to Oregon and live with her during the school year, subject to Mother's custodial time during breaks. The guardianship termination petitions went no further.

Since the move, Toby has been diagnosed with autism and ADHD, and receives specialized school services. Both children began receiving therapy in Kauaʻi, then continued services in Oregon. Caring for the children's emotional and special needs, and Mother's ability to manage that care, became a focal point of the fitness dispute that followed.

In December 2021, Grandmother moved to undo the 2020 stipulation, reinstating Grandfather as co-guardian and restoring the guardianship to unlimited.

Then, in February 2022, Mother and her boyfriend filed joint petitions to terminate the guardianships for both children. The boyfriend's standing to participate in the family court proceedings as an "interested party" was challenged in circuit court, but Guardians later withdrew the motion. At the ICA, Guardians unsuccessfully attempted to strike the

boyfriend's briefing. The Guardians have not renewed their objections here, and we do not address them.

Father does not seek custody. He supports continuing the guardianship.

### 1. Family Court Decision

The family court held four days of hearings on the termination petition and motion to modify the guardianship.

In January 2023, the family court granted Grandmother's motion to undo the 2020 stipulation. It denied the petitions for termination of the children's guardianships.

The family court applied HRS § 560:5-210(b) to the termination question. It invoked the parental presumption from In re Guardianship of Jane Doe, subject to rebuttal. See In re Guardianship of Doe, 93 Hawai'i 374, 385, 4 P.3d 508, 519 (App. 2000).

The court assessed Mother's fitness under the preponderance of the evidence standard. See In re Guardianship of Doe, 106 Hawai'i 75, 78, 101 P.3d 684, 687 (App. 2004) (applying a preponderance of the evidence standard to fitness in guardianship proceedings). It found her unfit. The court grounded that determination on Mother's "limited involvement with her children and her demonstrated lack of knowledge or ability to take into account [the children's] emotional and special needs."

5

The court found that Mother did not "demonstrate an understanding of [Izzy's] emotional needs nor [Toby's] special needs relating to his ADHD and [a]utism diagnos[e]s."  The court-appointed guardian ad litem testified that Mother was unable to parent the children.  And Mother, the court found, "made little to no attempt to show that it is in the children's best interest to have the guardianship terminated."  She relied solely on the parental presumption.  Because Mother was not fit, the court concluded, the presumption was rebutted.

The family court then reviewed the HRS § 571-46 best interest factors.  It concluded that Grandmother and Grandfather's unlimited guardianship served the best interest of the children.

Mother and her boyfriend appealed.

**2.   ICA Memorandum Opinion**

The ICA held that the family court applied the wrong standard of proof when it found Mother unfit to parent Toby and Izzy.  In its formulation, "the court may override parental consent in a proceeding to appoint a guardian or to terminate a guardianship created by parental consent only if it finds by <u>clear and convincing evidence</u> that the parent is unfit, i.e., is unwilling or unable to exercise their parental rights." (Emphasis added.)  <u>Matter of Guardianship of I.W.</u>, No. CAAP-23-0000356, 2025 WL 3215249, at *15 (Haw. App. Nov. 18, 2025).

6

The ICA identified HRS § 560:5-210 as the operative statute for termination and other post-appointment proceedings.  It authorizes "any order that is in the best interest of the ward."

The court then turned to its earlier decision in In re Guardianship of Doe, 106 Hawai'i at 78, 101 P.3d at 687, which held that the preponderance standard governs parental fitness when appointing a guardian.  The statute at issue was HRS § 560:5-204 (2018), which covers the initial appointment of guardians.  Id.

In our case, however, the ICA reasoned that the preponderance standard in Guardianship of Doe (a holding based on a 1993 version of HRS § 560:5-204) was superseded by the legislature's 2004 enactment of HRS § 560:5-204, modeled on the 1998 Uniform Guardianship and Protective Proceedings Act.  The new HRS § 560:5-204 not only required the appointment be in the best interest of the child, but also required that either "the parents consent, all parental rights have been terminated, or the parents are unwilling or unable to exercise their parental rights."  (Emphasis added.)  Matter of Guardianship of I.W., 2025 WL 3215249, at *15.  Under HRS § 587A-33 (2018), parental rights may be terminated when "clear and convincing evidence exists that the parent is unwilling and unable to provide the child with a safe family home, and it is not reasonably foreseeable that the parent will become able to do so within a

7

reasonable period of time." Id. Thus, the ICA ruled, the clear and convincing standard should apply.

The legislature has not specified the standard of proof required for guardianship modification and termination proceedings. The ICA filled the gap. Citing fundamental liberty interests and legislative history describing guardianship as a last resort, it held that clear and convincing evidence of unfitness is required.

Nor was the error harmless. The court examined the two factors the family court relied on to assess fitness: (1) Mother's involvement and communication with the children, and (2) her knowledge of and ability to address the children's emotional, educational, and special needs. On neither factor, the ICA held, was the evidence so overwhelming that the wrong standard could not have affected the outcome.

The ICA vacated in part and remanded the guardianship order for further proceedings.

Grandmother and Grandfather sought cert.

### III.

#### A. The Parental Presumption Applies in Guardianship Proceedings

This court has not expressly held that a fit parent is presumed to act in the best interest of their child in guardianship proceedings. We do so now.

8

The parental presumption begins with <u>Troxel v. Granville</u>, 530 U.S. 57 (2000).  There, the United States Supreme Court held that "there is a presumption that fit parents act in the best interests of their children."  <u>Id.</u> at 68.  "[S]o long as a parent adequately cares for [their] children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."  <u>Id.</u> at 68-69.

A parent's interest in raising their children is protected under article I, sections 5 and 6 of the Hawai'i Constitution.  Haw. Const. art. I, §§ 5, 6; <u>In the Interest of JH</u>, 152 Hawai'i 373, 378, 526 P.3d 350, 355 (2023); <u>In re Doe</u>, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002).  Parents "have a fundamental right to care, control, and have custody of their children."  <u>Interest of JH</u>, 152 Hawai'i at 378, 526 P.3d at 355.  The right to privacy prevents the government from unjustified interference with "child rearing and education."  <u>Doe v. Doe</u>, 116 Hawai'i 323, 334, 172 P.3d 1067, 1078 (2007).

This court has already applied the <u>Troxel</u> presumption to third-party visitation.  <u>See</u> <u>Doe</u>, 116 Hawai'i at 333, 172 P.3d at 1077 (grandparent visitation).  Guardianships invoke similarly significant rights.  A guardian holds the "powers of a parent

regarding the [child's] support, care, education, health, and welfare." HRS § 560:5-208(a) (2018). If the presumption protects a parent's choice to limit a grandparent's visit, it protects a parent's choice to end an arrangement that displaces day-to-day parenting.

Other jurisdictions agree. Courts "have held that a parent does not relinquish [their] fundamental liberty interest in raising [their] child by consenting to a guardianship, and, thus, is entitled to the Troxel presumption in a proceeding to terminate the guardianship." In re Guardianship of Reena D., 35 A.3d 509, 513 (N.H. 2011); Morris v. Clark, 572 S.W.3d 366, 371 (Ark. 2019); In re Guardianship of D.J., 682 N.W.2d 238, 246 (Neb. 2004); Hunter v. Hunter, 771 N.W.2d 694, 705 (Mich. 2009); see also In re D.I.S., 249 P.3d 775, 784 (Colo. 2011) ("[T]he Troxel presumption must prevail over any competing presumption in favor of an established custodial environment, including guardianships.").

The rule applies equally to the guardianship context. We hold that the parental presumption as to the best interest of the child also applies in guardianship proceedings.

**B.  Due Process Requires Clear and Convincing Evidence of Unfitness**

We agree with the ICA. Unfitness must be shown by clear and convincing evidence. But we part ways on how to get there.

The ICA built its holding on HRS § 560:5-204. That statute controls the initial appointment of a guardian. It requires either parental consent, a prior parental termination order, or a showing that parents are unwilling or unable to parent. HRS § 560:5-204. The ICA reasoned that because termination of parental rights is itself a clear and convincing matter under HRS § 587A-33, the appointment statute imports the same standard, one that carries over to existing proceedings involving guardianship.

Several steps in that chain give us pause. HRS § 560:5-204 addresses initial *appointment*, not modification or termination. The legislature placed those proceedings in a separate section, HRS § 560:5-210, a statute that speaks only to the "best interest of the ward" inquiry. HRS § 560:5-210. Reading the appointment statute to silently set the burden of proof for post-appointment proceedings asks HRS § 560:5-204 to do work it wasn't written to do. And the legislative history surrounding the 2004 amendments – describing guardianships as a "last resort" and stressing scope and flexibility – speaks to design, not burden of proof. See H. Stand. Comm. Rep. No. 597, in 2004 House Journal, at 1639.

Nowhere did the legislature mention "clear and convincing," or cross-reference HRS § 587A-33. We decline to read the

11

termination of parental rights standard into a guardianship statute through legislative silence.

"Parents have a substantive liberty interest to parent their child." Interest of JH, 152 Hawai'i at 378, 526 P.3d at 355. This interest is also entitled to due process protection. DJ v. CJ, 147 Hawai'i 2, 17, 464 P.3d 790, 805 (2020). "[A] parent's right to the care, custody, and control of the parent's child is a fundamental liberty interest protected by the United States and Hawai'i constitutions and entitled to due process protection." Id.

Because a guardian holds "the powers of a parent regarding the ward's support, care, education, health, and welfare," guardianship proceedings implicate a parent's fundamental rights. HRS § 560:5-208(a).

To identify what process is due, we balance the three Mathews factors: (1) the private interest affected by official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the value of additional procedural safeguards, and (3) the government's interest. State v. Bani, 97 Hawai'i 285, 297, 36 P.3d 1255, 1267 (2001) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); Santosky v. Kramer, 455 U.S. 745, 758 (1982) (the Mathews balancing test

demonstrated that using the preponderance standard in parental terminations is "inconsistent with due process").

The private interest at stake in guardianship proceedings is substantial. A parent who moves to terminate a guardianship wants to reclaim the rights that define the parent-child relationship: custody, educational and medical decisions, and the small everyday choices that over the years shape their child's life. Even when a guardianship is nominally temporary, a finding of unfitness operates as a long-term barrier to reunification.

The Maine Supreme Court observed that parental rights decisions fall on a continuum of finality. "[A]lthough the appointment of a guardian . . . does not result in the same degree of finality as a termination of parental rights or a determination of de facto parenthood, the appointment is more final than a jeopardy order in a child protection proceeding, and parental rights are transferred to the guardian almost in their entirety." In re Guardianship of Chamberlain, 118 A.3d 229, 241 (Me. 2015). So "[w]hen the government authorizes an extensive and potentially permanent intrusion into fundamental constitutional rights, the risk of erroneous deprivation of a parent's rights is high if the decision-maker does not have a greater-than-ordinary degree of confidence in the correctness of its factual findings — namely, the degree of confidence afforded

13

by the standard of proof by clear and convincing evidence." Id. (emphasis added).

The line between parental termination and a long-lasting guardianship is thin.

The risk of erroneous deprivation runs in one direction. The HRS § 571-46(b) best interest factors in guardianship proceedings tend to favor continued guardianship. Not because the parent is unfit, but because guardianship itself produces the very evidence used to sustain that status quo. Guardians by definition are the ones caregiving and meeting the child's day-to-day needs. They will likely prevail on factors keyed to "the history of caregiving or parenting," and their ability to meet physical health, safety, educational, and emotional needs. See HRS § 571-46(b)(4), (6)-(9).

The longer the arrangement lasts, the deeper that advantage grows. A parent who has stepped back to let a guardian step in has, by the act of stepping back, weakened their own showing on the caregiving and needs-meeting factors. The preponderance standard for fitness gives the structural tilt full effect. A clear and convincing standard restores the balance.

The government's interest is two-fold. The State has a compelling interest in child welfare. See A.A. v. B.B., 139 Hawai'i 102, 116 n.22, 384 P.3d 878, 892 n.22 (2016) ("The State's compelling interest and duty with regard to the welfare

14

of children has long been recognized in this jurisdiction."). But it also has a strong interest in family reunification, and encouraging, not deterring, parents from consenting to temporary guardianships to protect their children. See In re D.I.S., 249 P.3d at 787.

A demanding standard for unfitness serves both interests at once. It keeps a guardianship in place where the evidence warrants it, and it preserves the parents' path back when it does not. Other jurisdictions have reached the same conclusions under similar reasoning. See Matter of Guardianship of L.Y., 968 N.W.2d 882, 899 (Iowa 2022) ("Because of the liberty interests at stake, the clear and convincing evidence standard is the appropriate one to apply in proceedings to terminate guardianships of minor children established with parental consent."); Guardianship of Kelvin, 114 N.E.3d 102, 109 (Mass. App. Ct. 2018); Guardianship of Reena D., 35 A.3d at 515.

We hold that the due process and privacy protections of the Hawai'i Constitution require clear and convincing evidence of parental unfitness before a family court may decline to apply the presumption that a fit parent acts in the best interest of the child. To the extent In re Doe held otherwise, it is overruled. See 106 Hawai'i at 78, 101 P.3d at 687.

15

C.    **The Best Interest Analysis Remains a Preponderance Inquiry**

Two more points.  First, what the heightened standard does not require.

Clear and convincing evidence controls the threshold question of fitness.  It does not govern the best interest analysis.

HRS § 560:5-210(b) directs that any post-appointment order be in the best interest of the child, and HRS § 571-46 supplies the familiar factors.  Those factors are weighed under a preponderance of the evidence standard.  In re D.I.S., 249 P.3d at 786 ("[T]he Troxel presumption and the court's statutory role in considering what is in the child's best interests can be accommodated through the guardian bearing the burden of proof by a preponderance of the evidence.").

Mother and her boyfriend suggest a different rule: once a parent is found fit, the best interest inquiry ends and termination of guardianship automatically follows.

The parental presumption neither requires termination at the fit parent's behest, nor displaces the best interest analysis central to HRS § 560:5-210.  As another court reasoned, "nothing in our constitutional or statutory scheme, the common law, or general practice supports the proposition that the guardianship is terminable at will."  Boisvert v. Harrington, 796 A.2d 1102, 1108 (Vt. 2002); see also A.A., 139 Hawai'i at

16

106, 384 P.3d at 882 ("In cases involving child custody, it is well established that the guiding consideration is the best interests of the child.").

We also decline to import the "harm to the child" standard from Doe v. Doe. See 116 Hawai'i at 336, 172 P.3d at 1080. Guardianship involves daily custody, not once-in-a-while visits. The stakes for both parent and child are higher and the dimensions of decision-making are broader.

A rule automatically granting a fit parent's termination petition unless removal would harm the child collapses fitness and best interest into a single inquiry. It overrides the legislature's decision to keep them separate. Other jurisdictions do not apply the "harm to the child" rule in the guardianship termination context. See Boisvert, 796 A.2d at 1107-08; In re D.I.S., 249 P.3d at 786; Hunter, 771 N.W.2d at 705; Guardianship of Reena D., 35 A.3d at 515. We follow them.

So the rule is straightforward. When a parent is found fit, a presumption operates in favor of termination. Guardians may rebut that presumption by showing, under a preponderance of the evidence, that continued guardianship serves the child's best interest. See In re D.I.S., 249 P.3d at 786.

D.    **How the Presumption Operates in the Best Interest Analysis**

We recognize the parental presumption in the guardianship context for the first time. A word on how it should work.

17

The presumption carries real weight. It's not just a conceptual checkbox on the way to HRS § 571-46's analysis. When a family court considers a factor that favors the guardian, the presumption requires asking whether that surface-level advantage reflects the parent's true ability to parent rather than the conditions the guardianship itself created.

Consider an example. A parent who once met their child's basic physical, emotional, and safety needs may lack a recent record of doing so. The guardian has been doing it. A guardian with superior financial resources may currently meet those needs more comfortably. Neither fact, standing alone, should be allowed to tip the scale. The presumption demands that the court take account of the structural reasons the guardian's showing looks strong and the parent's looks thin.

But the presumption is not absolute. Time matters. Attachment matters. The deeper the child's roots in the guardian's home, the more weight the guardian's evidence may carry. As the Colorado Supreme Court put it, "the longer the child resides with and is cared for by guardians, the more likely it may be that guardians, despite the presumption in parents' favor, will be able to show . . . that the best interests of the child are served by continuation of the guardianship." In re D.I.S., 249 P.3d at 787.

A parent's brief absence from caregiving should not weigh against them as heavily as a parent's prolonged one. See HRS § 571-46(b)(4) (the history of caregiving or parenting).

We leave the case-specific best interest determination to the family court. The presumption gives parental rights the constitutional credence they deserve, without taking from the family court what family courts do best – protect children based on facts, not formulas.

## E. The Constitutional Error Was Not Harmless

The family court found Mother unfit by a preponderance of the evidence. That was constitutional error. And the error was not harmless.

A due process violation that touches a fundamental parental right is not the kind of mistake an appellate court overlooks. See Doe v. Doe, 120 Hawai'i 149, 170, 202 P.3d 610, 631 (App. 2009). Because it found Mother unfit, the family court declined to apply the parental presumption to the best interest analysis.

The error was structural in operation. It set the level of proof at which Mother's constitutionally protected interest could be set aside. The bulk of the family court's analysis – best interests under HRS § 571-46 – progressed without the parental presumption because the fitness finding had already removed it from the equation.

On a record where the threshold determination is constitutionally crumbly, what follows cannot be salvaged.

We affirm the ICA's remand.

The family court must reassess Mother's fitness under the clear and convincing evidence standard.  See In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) ("[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.").

If the family court finds Mother fit, it must apply the parental presumption to the best interest analysis.  If it finds her unfit under the proper standard, it may proceed under HRS § 571-46 without the presumption.

## IV.

We affirm the ICA's November 18, 2025 Memorandum Opinion and December 19, 2025 Judgment on Appeal.  We remand to the family court for further proceedings consistent with this opinion.

| | |
|---|---|
| Kai Lawrence<br>(on the briefs)<br>for Petitioners | /s/ Vladimir P. Devens |
| | /s/ Sabrina S. McKenna |
| Mother<br>(on the briefs)<br>Respondent | /s/ Todd W. Eddins |
| | /s/ Lisa M. Ginoza |
| | /s/ Kevin T. Morikone |

